Robert C. Schubert (S.B.N. 62684)
(rschubert@sjk.law)
Amber L. Schubert (S.B.N. 278696)
(aschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:    (415) 788-4220
Facsimile:    (415) 788-0161

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

GABRIELE WILLIS, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

   v.

WESTJET AIRLINES LTD.,

      Defendant.

Case No. **'25CV2785 LL    MSB**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Class Action Complaint

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Upon personal knowledge as to her own acts, and based upon her investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiff Gabriele Willis, on behalf of herself and all others similarly situated, alleges as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this class action against WestJet Airlines Ltd. ("Defendant" or "WestJet") for its failure to adequately secure and safeguard her and over one million other individuals' personally identifying information ("PII") including names, dates of birth, mailing addresses, passport or government identification information, accommodations requested during travel, complaints filed, Rewards Member points balances, and WestJet credit card identifiers (e.g. WestJet World Elite Mastercard).

2. WestJet is a Canadian airline that flies to 100 destinations in North America, Central America, the Caribbean, Europe, and Asia.[1]

3. WestJet operates year-round flights between major Canadian cities and the following United States destinations: San Diego, Orange County, San Francisco, Los Angeles, Palm Springs, Las Vegas, Fort Lauderdale, Fort Myers, Phoenix, Houston, Minneapolis, Atlanta, Orlando, New York City, and Honolulu.[2]

4. WestJet operates seasonal flights between major Canadian cities and the following United States destinations: Anchorage, Austin, Boston, Chicago, Denver, Detroit, Kona, Lihue, Nashville, Raleigh-Durham, Salt Lake City, Seattle, and Washington, D.C.[3]

---

[1] *Who we are*, WESTJET, https://www.westjet.com/en-ca/who-we-are (last visited Oct. 17, 2025).

[2] *Route map*, WESTJET, https://www.westjet.com/en-ca/flights/route-map (last visited Oct. 17, 2025); *List of WestJet Destinations*, WIKIPEDIA, https://en.wikipedia.org/wiki/List_of_WestJet_destinations#cite_note-USS25-61 (last visited Oct. 17, 2025).

[3] *Id.*

5.    The Data Breach affected approximately 1.2 million WestJet customers.[4]

6.    Airlines typically store sensitive personal information of their customers, such as government identification documents. Therefore, Plaintiff and Class Members provided the PII to Defendant as a condition of flying on WestJet Airlines.

7.    WestJet owes its customers an affirmative duty to adequately protect and safeguard this private information against theft and misuse. Despite such duties created by statute, regulation, and common law, at all relevant times, WestJet utilized deficient data security practices, thereby allowing sensitive and private data to fall into the hands of strangers.

8.    On June 13, 2025, WestJet "identified suspicious activity on [its] systems."[5]

9.    WestJet later learned that "certain data was illegally obtained from WestJet's systems"[6] such as names, dates of birth, mailing addresses, passport or government identification information, accommodations requested during travel, or complaints filed.[7]

10.    WestJet did not begin notifying affected individuals such as Plaintiff until on or around September 29, 2025.[8]

---

[4] *Data Breach Notifications*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3f05cd3c-b473-468f-8577-b95f19ffd458.html (last visited Oct. 17, 2025).

[5] *WestJet provides further update on June 13, 2025 cybersecurity incident*, WESTJET (SEPT. 29, 2025), https://www.westjet.com/en-ca/news/2025/westjet-provides-further-update-on-june-13-2025-cybersecurity-incident (last visited Oct. 17, 2025).

[6] *Id.*

[7] *See* Exhibit A.

[8] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

11.    But for WestJet's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect customer PII, the Data Breach would not have occurred.

12.    Defendant is well-aware that it is at high risk of attempted cyberattack due to the high value of the sensitive data.

13.    Despite Defendant's awareness of both the value and sensitivity of the data it safeguarded and serious risk presented by insufficient security practices, Defendant did not take sufficient steps to ensure that its systems were secure. Defendant knew or should have known about the risk to the data it stored and processed, and the critical importance of adequate security measures in the face of increasing threats.

14.    The Data Breach was directly and proximately caused by Defendant's failure to implement reasonable and industry-standard data security practices necessary to protect its systems from a foreseeable and preventable cyberattack. Through this wrongful conduct, the sensitive PII of over one million individuals is now in the hands of cybercriminals, who target this sensitive data for its value to identity thieves. Plaintiff and Class Members are now at a significantly increased and impending risk of fraud, identity theft, and similar forms of criminal mischief—risks which may last the rest of their lives.

15.    By aggregating information obtained from the Data Breach with other sources or other methods, criminals can assemble a full dossier of private information on an individual to facilitate a wide variety of frauds, thefts, and scams. Criminals can and do use victims' names and other personal information to open new financial accounts, incur credit charges, obtain government benefits and identifications, fabricate identities, and file fraudulent tax returns well before the person whose PII was stolen becomes aware of it. Any one of these instances of identity theft can have devastating consequences for the victim, causing years of often irreversible damage to their credit scores, financial stability, and personal security.

16. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes. Moreover, Plaintiff and Class Members have lost the inherent value of their private data.

17. Moreover, Defendant's failure to promptly notify Plaintiff and Class Members that they had been impacted by this data breach made it more difficult for Plaintiff to take swift action to respond to the breach.

18. Plaintiff and the Class will have to incur costs to pay a third-party credit and identity theft monitoring service for the rest of their lives as a result of the Data Breach

19. As a result of Defendant's conduct and the resulting Data Breach, Plaintiff's and Class Members' privacy has been invaded, their PII is now in the hands of criminals, they have either suffered or will suffer fraud or identity theft, or face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

20. Plaintiff, on behalf of herself and all others similarly situated, herein alleges claims for negligence, breach of implied contract, invasion of privacy under Article I, Section 1 of the California Constitution, and violation of the California Customer Records Act, California Consumer Privacy Act of 2018, and California's Unfair Competition Law. Plaintiff on behalf of herself and the Class, seeks: (i) actual damages, economic damages, statutory damages, and nominal damages; (ii) punitive damages; (iii) fees and costs of litigation; (iv) injunctive relief, including the adoption of reasonably sufficient practices to safeguard PII in Defendant's custody, care, and control in order to prevent incidents like the Data Breach from recurring in the future and for Defendant to provide long-term identity theft protective services to Plaintiff and Class Members; and (v) such other relief as the Court deems just and proper.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

### PARTIES

**A.** **Plaintiff**

21.    Plaintiff Gabriele Willis is a resident of El Cajon, California and a citizen of California.

**B.** **Defendant**

22.    Defendant WestJet Airlines Ltd. is a Canada corporation with its principal place of business located at 525 8th Avenue SW, Suite 2400, Calgary, Alberta, Canada. WestJet's registered agent is Cogency Global, Inc., located at 1325 J Street, Suite 1550, Sacramento, CA.

### JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the putative Class, as defined below, is a citizen of a state other than that of Defendant, there are more than 100 putative Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

24.    This Court has specific personal jurisdiction over Defendant because Defendant purposefully avails itself of the privileges of conducting substantial, continuous, and systematic business within California. WestJet advertises and markets its flights directly to California consumers, maintains a U.S. website through which California residents, including Plaintiff, routinely purchase tickets, and operates year-round flights from San Diego, Orange County, Los Angeles, Palm Springs, and San Francisco, expressly aimed towards California customers. Through these activities, WestJet knowingly collects, stores, and processes the PII of thousands of California residents in connection with their bookings, loyalty accounts, and credit-card transactions. A substantial part of the conduct giving rise to Plaintiff's claims also arose out of WestJet's activities in California, particularly San Diego.

25.    Defendant derives significant revenue from these commercial activities in California and has repeatedly invoked the benefits and protections of California's

laws and economy by contracting with California residents, entering into ongoing relationships with them, and engaging in continuous business operations through California airports. The claims asserted here arise directly out of those contacts because Plaintiff's PII was collected in California, stored on systems used to service California customers, and compromised in the same course of conduct that gave rise to this action. Accordingly, the exercise of jurisdiction over Defendant in this District is consistent with due process and California's long-arm statute.

26.    Venue in proper in this District 28 U.S.C. § 1391 because Defendant transacts business within this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. WestJet markets and sells tickets to residents of this District, operates year-round flights into and out of San Diego International Airport, and derives material revenue from those operations. Plaintiff purchased her WestJet flight online from her home in El Cajon, California, and in doing so provided the PII that Defendant collected, stored, and ultimately compromised in the Data Breach from this District. Defendant's collection and retention of California consumers' PII, including Plaintiff's, forms the basis of this lawsuit, and those activities occurred in substantial part within this District.

**FACTUAL BACKGROUND**

A.    **WestJet Collects, Stores, and Maintains Personally Identifiable Information**

27.    WestJet is a Canadian airline that flies to 100 destinations in North America, Central America, the Caribbean, Europe, and Asia.[9]

28.    WestJet operates four weekly flights from San Diego to Calgary,[10] and seasonally operates up to eight flights a week from San Diego to Vancouver.[11]

29.    WestJet represents to customers that it is "committed to respecting and safeguarding your privacy."[12]

30.    In its Loyalty Program Privacy Statement, WestJet claims that it:
has sophisticated security measures and procedures in place to help ensure that your personal information is protected from misuse and from unauthorized access, use or disclosure.[13]

31.    WestJet is aware of the sensitive nature of the PII it collects, and it acknowledges the importance of data privacy.

32.    Defendant's public-facing statements on privacy and security make it clear that it is aware of the need to safeguard the sensitive PII entrusted to it by customers as part of providing its travel services.

33.    Despite these strong proclaimed proactive policies and approaches to

---

[9] *Who we are*, WESTJET, https://www.westjet.com/en-ca/who-we-are (last visited Oct. 17, 2025).

[10] https://www.flightconnections.com/flights-from-san-to-yyc (last visited Oct. 17, 2025).

[11] https://www.flightconnections.com/flights-from-san-to-yvr (last visited Oct. 17, 2025).

[12] *Privacy Statement*, WESTJET, https://www.westjet.com/en-us/legal/privacy-policy (last visited Oct. 17, 2025).

[13] *WestJet Rewards Loyalty Program Privacy Statement*, WESTJET, https://www.westjet.com/en-us/rewards/terms-conditions/privacy (last visited Oct. 17. 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

data security and privacy for their customers, Defendant failed to adequately secure and safeguard its systems and networks from a foreseeable and preventable cyberattack. This conduct proximately resulted in the Data Breach and significant harm to Plaintiff and the Class.

**B.    The Data Breach Exposed Valuable PII**

34.    On June 13, 2025, WestJet "identified suspicious activity on our WestJet systems" and "determined that these were the actions of a sophisticated criminal third party, who gained unauthorized access to our systems."[14]

35.    According to Defendant's Data Breach Notice, the exfiltrated data included:

> name, date of birth, mailing address, information about the travel document you used when traveling with WestJet (such as your passport or other government issued identification number) and other information associated with travel needs such as accommodations requested or complaints filed.[15]

36.    WestJet Rewards Members' Rewards identification numbers, point balances, and "other information linked to the use of your account" were also exfiltrated.[16]

37.    WestJet RBC Mastercard, WestJet RBC World Elite Mastercard, and/or WestJet RBC World Elite Mastercard holders' "credit card identifier[s] (e.g. "World Elite") and information about changes to your WestJet points balance" was also exfiltrated.[17]

38.    Despite Defendant's duties and commitments to safeguard sensitive and private information, Defendant failed to follow industry-standard practices in securing Plaintiff's and the Class Members' PII, as evidenced by the Data Breach.

---

[14] *See* Exhibit A.

[15] *Id.*

[16] *Id.*

[17] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

39.    Defendant did not notify affected individuals until on or around September 29, 2025.[18]

40.    Defendant has not provided any details about the dates of the breach, the duration of the breach, the root cause of the Data Breach, the vulnerabilities exploited, the criminals responsible for the breach, and the remedial measures undertaken to ensure such a breach does not occur again. To date, Defendant has not explained or disclosed these facts with Plaintiff and Class Members.

41.    Defendant has offered no substantive steps to help victims like Plaintiff and Class Members to protect themselves.

42.    Without these details, Plaintiff's and Class Members' ability to mitigate harms resulting from the Data Breach is severely diminished.

## C.    Defendant Had Ample Notice That It Was a Likely Cyberattack Target

43.    At all relevant times, Defendant knew, or should have known, that the PII it was entrusted with was a target for malicious actors. Defendant knew this given the unique type and the significant volume of data on its networks, servers, and systems, comprising individuals' detailed and confidential personal information and, thus, the significant number of individuals who the exposure of the PII would harm.

44.    As custodian of Plaintiff's and Class Members' PII, Defendant knew or should have known the importance of protecting its PII, and of the foreseeable consequences and harms to such persons if any data breach occurred.

45.    According to the Consumer Financial Protection Bureau, the number of data breach and identity theft complaints it received grew from 14,319 in 2020 to

---

[18] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

32,469 in 2022.[19] It is well known among companies that PII such as social security numbers and financial information is valuable and frequently targeted by criminals.

46.    The Federal Trade Commission has warned consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[20]

47.    In April 2020, ZDNet reported that:

ransomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay.[21]

48.    Criminals can commit all types of fraud, including: obtaining a driver's license or official identification card in the victim's name but the thief's picture, using the victim's name and SSN to obtain government benefits, to obtain lending or lines of credit, filing a fraudulent tax return using the victim's information. Identity thieves may obtain a job using the victim's social security number, rent a house, or give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[22]

49.    Defendant's security obligations were especially important due to the substantial increase of cyberattacks and data breaches in recent years.

---

[19] *See Compromised: Why experts say data breaches are on the rise,* NBC 6 SOUTH FLORIDA, https://www.nbcmiami.com/responds/compromised-why-experts-say-data-breaches-are-on-the-rise/3473306/ (last accessed June 5, 2025).

[20] *See* What to Know About Identity Theft, FEDERAL TRADE COMMISSION (Sept. 2024), https://consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed June 5, 2025).

[21] Catalin Cimpanu, *Ransomware mentioned in 1,000+ SEC filings over the past year*, ZDNET (April 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed Sept. 1, 2025).

[22] *See* Warning Signs of Identity Theft, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed June 5, 2025).

50.    Defendant knew or should have known that as a major airline, it is a prime target of ransomware actors. Defendant also knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

**D.    Defendant Breached Its Duties to Plaintiff and Class Members, and Failed to Comply with Regulatory Requirements and Industry Practices.**

51.    Because Defendant was entrusted with PII at all times herein relevant, Defendant owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to their networks and systems. Defendant also owed a duty to safeguard PII because it was on notice that it was handling highly valuable data and knew there was a significant risk it would be targeted by cybercriminals. Furthermore, Defendant knew of the extensive, foreseeable harm that would ensue for the victims of a data breach, and therefore also owed a duty to reasonably safeguard that information.

52.    Security standards commonly accepted among businesses like Defendant that store PII include, without limitation:

　　　i.    Maintaining a secure firewall configuration;

　　　ii.    Monitoring for suspicious or irregular traffic to servers or networks;

　　　iii.    Monitoring for suspicious credentials used to access servers or networks;

　　　iv.    Monitoring for suspicious or irregular activity by known users;

　　　v.    Monitoring for suspicious or unknown users;

11

vi.    Monitoring for suspicious or irregular server requests;

vii.    Monitoring for server requests for PII;

viii.    Monitoring for server requests from VPNs; and

ix.    Monitoring for server requests for Tor exit nodes.

53.    The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[23] and protection of PII which includes basic security standards applicable to all types of businesses.[24]

54.    The FTC recommends that businesses:

i.    Identify all connections to the computers where sensitive information is stored.

ii.    Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

iii.    Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

iv.    Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

---

[23] *Start with Security: A Guide for Business*, FTC (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[24] *Protecting Personal Information: A Guide for Business*, FTC (Oct. 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

v.    Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

vi.    Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

vii.    Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

viii.    Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

ix.    Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

55.    As described further below, Defendant owed a duty to safeguard PII under the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act") to ensure that all information it received, maintained, and stored was secure. This statute was enacted to protect Plaintiff and the Class Members from the type of conduct in which

13

Defendant engaged, and the resulting harms Defendant proximately caused Plaintiff and the Class Members.

56.    Under the FTC Act, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members.

57.    Defendant breached its duty to exercise reasonable care in protecting Plaintiff's and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's and Class Members' sensitive personal information, failing to encrypt or anonymize PII within its systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's and Class Members' confidential and private information. Additionally, Defendant breached its duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendant also violated its duties under the FTC Act.

58.    Defendant failed to prevent the Data Breach. Had Defendant properly maintained and adequately protected its systems, servers, and networks, the Data Breach would not have occurred.

59.    Additionally, the law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that it can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. Defendant further breached its duties by failing to provide any notice of the Data Breach to Plaintiff and Class Members. In so doing, Defendant actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and Class Members.

**E.    The Experiences of Plaintiff**

60.    Plaintiff flew to Germany using WestJet Airlines in May 2025. She flew from San Diego International Airport to Vancouver International Airport, and then Vancouver International Airport to Frankfurt International Airport.

61.    Plaintiff purchased her WestJet flight online from her home in El Cajon, CA.

62.    Plaintiff has a WestJet Rewards account.

63.    On or around October 10, 2025, Plaintiff received notice of the Data Breach via U.S. Mail.[25]

64.    Plaintiff trusted that Defendant would use reasonable measures to protect her data according to state and federal law.

65.    Plaintiff provided Defendant with her most sensitive personal information, which was exfiltrated in the Data Breach.

66.    As a proximate result of the Data Breach, Plaintiff will spend time for the foreseeable future and beyond dealing with its consequences and self-monitoring her accounts and credit reports to monitor potentially suspicious and fraudulent activity. This time will be lost forever and cannot be recaptured.

67.    Plaintiff has and is experiencing fear, stress, and frustration because her sensitive information was stolen in the Data Breach, and not knowing by whom or for what purpose. This goes beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

68.    Plaintiff suffered actual injuries in the form of damages to and diminution in the value of her PII—a form of intangible property that was entrusted to Defendant—which was compromised in and as a proximate result of the Data Breach.

---

[25] *See* Exhibit A.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

69.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from her PII being obtained by unauthorized third parties and possibly cybercriminals.

70.    Plaintiff has a continuing interest in ensuring that her PII, which remains within Defendant's possession and control, is protected and safeguarded against future data breaches or cybersecurity risks.

71.    Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's harmful effects by failing to promptly notify her about it.

## F.    Plaintiff and the Class Suffered Actual and Impending Injuries Resulting from the Data Breach

72.    As a proximate result of Defendant's completely unreasonable security practices, identity thieves now possess the sensitive PII of Plaintiff and the Class. That information is extraordinarily valuable on the black market and incurs direct costs to Plaintiff and the Class. On the dark web—an underground Internet black market—criminals openly buy and sell stolen PII to create "identity kits" worth up to $2,000 each that can be used to create fake IDs, gain access to bank accounts, social media accounts, and credit cards, file false insurance claims or tax returns, or rack up other kinds of expenses.[26] And, "[t]he damage to affected [persons] may never be undone."[27]

73.    Unlike the simple credit-card breaches at retail merchants, these damages cannot be avoided by canceling and reissuing plastic cards or closing an account. Identity theft is far more pernicious than credit card fraud. Criminals' ability to open entirely new accounts—not simply prey on existing ones—poses far more dangerous

---

[26] Nick Culbertson, *Increased Cyberattacks on Healthcare Institutions Shows the Need for Greater Cybersecurity* (Jun. 7, 2021), FORBES, https://www.forbes.com/sites/forbestechcouncil/2021/06/07/increased-cyberattacks-on-healthcare-institutions-shows-the-need-for-greater-cybersecurity/?sh=ca928c05650d.

[27] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

problems. Identity thieves can retain the stolen information for years until the controversy has receded because victims may become less vigilant in monitoring their accounts as time passes. Then, at any moment, the thief can take control of a victim's identity, resulting in thousands of dollars in losses and lost productivity. The U.S. Department of Justice has reported that in 2021, identity theft victims spent on average about four hours to resolve problems stemming therefrom and that the average financial loss experienced by an identity theft victim was $1,160 per person.[28] Additionally, about 80% of identity theft victims reported some form of emotional distress resulting from the incident.[29]

74.    As a consequence of the Data Breach, Class Members' credit profiles can be destroyed before they even realize what happened, and they may be unable to legitimately borrow money, obtain credit, or open bank accounts. Class Members can be deprived of legitimate tax refunds or, worse yet, may face state or federal tax investigations due to fraud committed by an identity thief. And even the simple preventive step of adding oneself to a credit-fraud watch list to guard against these consequences substantially impairs Class Members' ability to obtain additional credit. In fact, many experts advise victims to place a freeze on all credit accounts, making it impossible to rent a car, get student loans, buy or rent big-ticket items, or complete a major new car or home purchase.

## CLASS ACTION ALLEGATIONS

75.    Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), and where applicable, 23(c)(4), Plaintiff seeks certification of the following Nationwide Class and California Subclass (collectively, the "Class"):

---

[28] Erika Harrell and Alexandra Thompson, Victims of Identity Theft, 2021, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS (Oct. 2023), *available at* https://bjs.ojp.gov/document/vit21.pdf.

[29] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**Nationwide Class:** All persons in the United States whose PII was accessed by and disclosed in the Data Breach to unauthorized persons. (and each person a "Class Member").

**California Subclass:** All persons in the State of California whose PII was accessed by and disclosed in the Data Breach to unauthorized persons. (and each person a "Class Member").

76.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

77.     This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

78.     *Numerosity Under Rule 23(a)(1)*. The Class is so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all members of the Class in a single action will provide substantial benefits to the parties and the Court. Defendant reported to the Maine Office of the Attorney General that 1.2 million individuals were impacted by the Data Breach. The Class is sufficiently numerous to warrant certification.

79.     *Commonality Under Rule 23(a)(2)*. Common legal and factual questions exist that predominate over any questions affecting only individual members of the Class. These common questions, which do not vary among members of the Class and which may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

a. Whether Defendant knew or should have known that its computer systems and networks were vulnerable to unauthorized third-party access or a cyberattack;

b. Whether Defendant failed to utilize and maintain adequate and reasonable security and preventive measures to ensure that its computer systems and networks were protected;

c. Whether Defendant failed to take available steps to prevent and stop the Data Breach from occurring;

d. Whether Defendant failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security;

e. Whether Defendant owed a legal duty to Plaintiff and Class Members to protect their PII;

f. Whether Defendant breached any duty to protect the PII of Plaintiff and Class Members by failing to exercise due care in protecting their sensitive and private information;

g. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Plaintiff and Class Members.

h. Whether Defendant provided timely, accurate, and sufficient notice of the Data Breach to Plaintiff and the Class Members;

i. Whether Plaintiff and Class Members have been damaged by the wrongs alleged and are entitled to actual, statutory, or other forms of damages and other monetary relief; and

j. Whether Plaintiff and Class Members are entitled to injunctive or equitable relief, including restitution.

80. *Typicality Under Rule 23(a)(3)*. Plaintiff's claims are typical of the claims of the Class. Plaintiff had her PII compromised in the Data Breach. Defendant's uniformly unlawful course of conduct injured Plaintiff and Class Members.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

81.    *Adequacy of Representation Under Rule 23(a)(4)*. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Plaintiff and her counsel intend to vigorously prosecute this action for the Class's benefit and have the resources to do so. Plaintiff and her counsel have no interests adverse to those of the other members of the Class.

82.    *Predominance and Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class Member's claim is impracticable. The damages, harm, and losses suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Even if each Class Member could afford individual litigation, the Court system could not. It would be unduly burdensome if tens of thousands of individual cases or more proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

83.    As a result of the foregoing, class treatment under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and (c)(4) is appropriate.

## FIRST CAUSE OF ACTION
### Negligence
### *(On Behalf of Plaintiff and the Nationwide Class)*

84.    Plaintiff incorporates the above allegations as if fully set forth herein.

85.     Because Defendant was entrusted with such PII at all times herein relevant, it owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to their networks and systems. This duty arose independently from any contract.

86.     Defendant knew, or should have known, of the risks inherent in collecting and storing massive amounts of PII, including the importance of adequate data security and the high frequency of ransomware attacks and well-publicized data breaches. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure to adequately safeguard its PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that sensitive information.

87.     Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's PII by failing to limit access to this information to unauthorized third parties and by not properly supervising both the way the PII was stored, used, and exchanged, and those in Defendant's employ responsible for such tasks.

88.     Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and circumstances of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

89.     Defendant also had a common law duty to prevent foreseeable harm to others. Defendant had full knowledge of the sensitivity and high value of the PII that it stored and the types of foreseeable harm and injury-in-fact that Plaintiff and Class Members could and would suffer if that PII were wrongfully disclosed, leaked, accessed, or exfiltrated. Defendant's conduct created a foreseeable and unreasonable risk of harm to Plaintiff and Class Members, who were the foreseeable victims of Defendant's inadequate data security practices.

90.     Defendant violated its duty to implement and maintain reasonable security procedures and practices, including through its failure to adequately restrict access to its systems that held millions of individuals' PII or encrypt or anonymize such data. Defendant's duty included, among other things, designing, maintaining, and testing their information security controls to ensure that PII in its possession was adequately secured by, for example, encrypting or anonymizing sensitive personal information, installing intrusion detection and deterrent systems and monitoring mechanisms, and using access controls to limit access to sensitive data.

91.     Defendant's duty of care also arose pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act"), under which Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members.

92.     The FTC Act was enacted to protect Plaintiff and the Class Members from the type of wrongful conduct in which Defendant engaged.

93.     Defendant's violation of the FTC Act constitutes negligence per se for purposes of establishing the duty and breach elements of Plaintiff's negligence claim. Those statutes were designed to protect a group to which Plaintiff belongs and to prevent the types of harm that resulted from the Data Breach.

94.     Defendant breached its duty to exercise reasonable care in protecting Plaintiff's and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's and Class Members' sensitive personal

information, failing to encrypt or anonymize PII within its systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for its provision of services to its clients and customers, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's and Class Members' confidential and private information. Additionally, Defendant breached its duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendant also violated its duties under the FTC Act.

95.     The law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. Defendant further breached their duties by failing to provide any notice of the Data Breach to Plaintiff and Class Members. In so doing, Defendant actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and Class Members. Timely disclosure was necessary so that Plaintiff and Class Members could, among other things: (i) purchase identity theft protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud; (iii) purchase or otherwise obtain credit reports; (iv) place or renew fraud alerts on a quarterly basis; (v) closely monitor loan data and public records; and (vi) take other meaningful steps to protect themselves and attempt to avoid or recover from identity theft and other harms.

96.     Plaintiff and Class Members had no ability to protect their PII once it was in Defendant's possession and control. Defendant was in an exclusive position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

97.    But for Defendant's breach of duty to adequately protect Class Members' PII, Class Members' PII would not have been stolen. As a result of Defendant's negligence, Plaintiff and Class Members suffered and will continue to suffer the various types of damages alleged herein. There is a temporal and close causal connection between Defendant's failure to implement adequate data security measures, the Data Breach, and the harms suffered by Plaintiff and Class Members.

98.    As a direct and traceable result of Defendant's negligence, Plaintiff and the Class have suffered or will suffer an increased and impending risk of fraud, identity theft, damages, embarrassment, humiliation, frustration, emotional distress, and lost time and out-of-pocket costs to mitigate and remediate the effects of the Data Breach. These harms to Plaintiff and the Class include, without limitation: (i) loss of the opportunity to control how their personal information is used; (ii) diminution in the value and use of their personal information entrusted to Defendant; (iii) the compromise and theft of their personal information; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (v) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (vi) unauthorized use of compromised personal information to open new financial and other accounts; (vii) continued risk to their personal information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the personal information in its possession; and (viii) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

99.    Defendant's negligence was gross, willful, wanton, and warrants the imposition of punitive damages given the clear foreseeability of a hacking incident, the extreme sensitivity of the private information under Defendant's care, and its

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

failure to take adequate remedial steps, including prompt notification of the victims, following the Data Breach.

100.    Plaintiff and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate long-term identity protection services. Plaintiff and Class Members are also entitled to the injunctive relief sought herein.

## SECOND CAUSE OF ACTION
### Breach of Implied Contract
### *(On Behalf of Plaintiff and the Nationwide Class)*

101.    Plaintiff incorporates the above allegations as if fully set forth herein.

102.    Plaintiff and Class Members entered into an implied contract with Defendant when they entrusted Defendant with their PII as a precondition for purchasing WestJet flights.

103.    As part of these transactions, Defendant agreed to safeguard and protect the PII of Plaintiff and Class Members and to timely and accurately notify them if their PII was breached or compromised.

104.    Defendant acquired, stored, and maintained the PII of Plaintiff and the Class.

105.    Plaintiff and Class Members were required to provide, or authorize the transfer of, their private information in order for Defendant to provide its services.

106.    Defendant solicited, offered, and invited Class Members to provide their private information as part of its regular business practices. Plaintiff and Class Members accepted Defendant's offer and provided their PII to Defendant.

107.    When Plaintiff and Class Members provided their PII to Defendant, they entered into implied contracts with Defendant and intended and understood that PII would be adequately safeguarded as part of that service.

108.    Defendant's implied promise of confidentiality to Plaintiff and Class Members includes consideration beyond those pre-existing general duties owed under the FTC Act, or other state or federal regulations. The additional consideration

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

109.    Plaintiff and Class Members paid money to Defendant and provided Defendant with their PII. In exchange, Defendant's implied promises include but are not limited to: (a) taking steps to ensure that any agents who are granted access to PII also protect the confidentiality of that data; (b) restricting access to qualified and trained agents; (c) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (d) applying or requiring proper encryption; (e) multifactor authentication for access; (f) protecting Plaintiff's and Class Members' PII in compliance with federal and state laws and regulations and industry standards; and (g) other steps to protect against foreseeable data breaches.

110.    Defendant's implied promises to safeguard Plaintiff's and Class Members' PII are evidenced by representations on Defendant's website. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant on the other, is further demonstrated by their conduct and course of dealing.

111.    Plaintiff and Class Members believed that Defendant would use part of the monies paid to Defendant under the implied contracts or the monies obtained from the benefits derived from the PII they provided to fund proper and reasonable data security practices.

112.    Plaintiff and the Class Members would not have entrusted their PII to Defendant in the absence of such an implied contract. Had Defendant disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and the other Class Members would not have provided their PII to Defendant.

113.    Defendant recognized that Plaintiff's and Class Members' PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

114.   Plaintiff and the Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

115.   Defendant breached the implied contracts it made with its customers by failing to take reasonable measures to safeguard their PII as described herein, as well as by failing to provide accurate, adequate, and timely notice to them that their PII was compromised as a result of the Data Breach.

116.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the other Class Members suffered and will continue to suffer damages from: (i) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (ii) the loss of the confidentiality of the stolen PII, (iii) the illegal sale of the compromised data on the dark web, (iv) lost work time, and (v) other economic and non-economic harms.

117.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to strengthen its data security systems, submit to future audits of those systems, and provide adequate long-term credit monitoring and identity theft protection services to all persons affected by the Data Breach.

## THIRD CAUSE OF ACTION
### Injunctive/Declaratory Relief
### *(On Behalf of Plaintiff and the Nationwide Class)*

118.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

119.   Defendant owes a duty of care to Plaintiff and Class Members, which required Defendant to adequately monitor and safeguard Plaintiff's and Class Members' PII.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

120.    Defendant and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII belonging to Plaintiff and Class Members.

121.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff and the Class continue to suffer injury as a result of the compromise of their PII and the risk remains that further compromises of their private information will occur in the future.

122.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant owes a legal duty to adequately secure the PII of Plaintiff and the Class within its care, custody, and control under the common law, and Section 5 of FTC Act;

b.    Defendant breached its duty to Plaintiff and the Class by allowing the Data Breach to occur;

c.    Defendant's existing data monitoring measures do not comply with its obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect the PII of Plaintiff and the Class within Defendant's custody, care, and control; and

d.    Defendant's ongoing breaches of said duties continue to cause harm to Plaintiff and the Class.

123.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another data breach or cybersecurity incident occurs, Plaintiff and the Class will not have an

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

adequate remedy at law because monetary relief alone will not compensate Plaintiff and the Class for the serious risks of future harm.

124.    The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiff and the Class will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

125.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach or cybersecurity incident, thus preventing future injury to Plaintiff and the Class and other persons whose PII would be further compromised.

## FOURTH CAUSE OF ACTION
### Invasion of Privacy Under California's Constitution (Article 1, § 1)
#### *(On Behalf of Plaintiff and the California Subclass)*

126.    Plaintiff, individually and on behalf of the California Subclass, incorporates by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

127.    Plaintiff and California Subclass Members have an interest in: (1) precluding the dissemination and/or misuse of their Private Information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion, or interference, including, but not limited to, the right to visit and interact with various internet sites for the provision of travel services without the risk of their data being exfiltrated.

128.    Plaintiff and California Subclass Members had a reasonable expectation that their communications, identity, and other data would remain confidential, and Defendant would keep its platform secure.

129. By failing to secure Plaintiff's and California Subclass Members' personal data, Defendant intentionally invaded Plaintiff's and California Subclass Members' right to privacy under the California Constitution.

130. This invasion of privacy is serious in nature, scope, and impact because it relates to consumers' Private Information. Moreover, it constitutes an egregious breach of the societal norms underlying the right of privacy.

131. As a result of Defendant's actions, Plaintiff and California Subclass Members have suffered harm and injury, including but not limited to invasion of their privacy rights.

132. Plaintiff and California Subclass Members have been damaged as a direct and proximate result of Defendant's invasion of privacy and are entitled to just compensation, including monetary damages.

133. Plaintiff and California Subclass Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

134. Plaintiff and California Subclass Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiff and California Subclass Members in conscious disregard of their rights.

135. Such damages are needed to deter Defendant from engaging in such conduct in the future.

136. Plaintiff also seeks other such relief as the Court may deem just and proper.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

## FIFTH CAUSE OF ACTION
### Violation of the California Customer Records Act
### Cal. Civ. Code §§ 1798.80 *et seq.* ("CCRA")
### *(On Behalf of Plaintiff and the California Subclass)*

137.   Plaintiff, individually and on behalf of the California Subclass, incorporates by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

138.   "[T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that

> owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure.

139.   WestJet is a business that owns, maintains, or licenses personal information, within the meaning of Cal. Civ. Code § 1798.81.5, about Plaintiff and California Subclass Members.

140.   Defendant violated Cal. Civ. Code § 1798.81.5 by failing to implement reasonable measures to protect California Subclass Members' PII.

141.   Businesses that own or license computerized data that includes personal information are required to notify California residents when their PII has been acquired (or has reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of personal information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

142.   Defendant is a business that owns or licenses computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82.

31

143.    Plaintiff's and California Subclass Members' PII includes personal information identified in Cal. Civ. Code § 1798.82(h) such as their names, state identification card numbers, and/or passport numbers, and is thereby covered by Cal. Civ. Code § 1798.82.

144.    Plaintiff and the California Subclass Members are "customers" within the meaning of Cal. Civ. Code § 1798.80(c), as their personal information was provided to Defendant for the purpose of utilizing Defendant's services.

145.    The Data Breach constituted a breach of Defendant's security systems, networks, and servers.

146.    Because Defendant reasonably believed that Plaintiff and California Subclass Members' PII was acquired by unauthorized persons during the Data Breach, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

147.    Defendant unreasonably delayed informing Plaintiff and the California Subclass Members about the breach of security of their PII after it knew the breach had occurred.

148.    Upon information and belief, no law enforcement agency instructed Defendant that notification to California Subclass Members would impede an investigation.

149.    Thus, by failing to disclose the Data Breach in a timely and accurate manner, Defendant also violated Cal. Civ. Code § 1798.82.

150.    Pursuant to Cal. Civ. Code § 1798.84, "[a]ny waiver of a provision of this title is contrary to public policy and is void and unenforceable," "[a]ny customer injured by a violation of this title may institute a civil action to recover damages," and "[a]ny business that violates, proposed to violate, or has violated this title may be enjoined."

151.    As a direct and proximate result of Defendant's violations of Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff and California Subclass Members were (and

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

32

continue to be) injured and suffered (and will continue to suffer) damages, as described above.

152.    Plaintiff and California Subclass Members seek relief under Cal. Civ. Code § 1798.84, including, but not limited to, actual damages, any applicable statutory damages, and equitable and injunctive relief.

## SIXTH CAUSE OF ACTION
### Violation of the California Consumer Privacy Act of 2018
### Civ. Code § 1798.100 *et seq.* ("CCPA")
### *(On Behalf of Plaintiff and the California Subclass)*

153.    Plaintiff, individually and on behalf of the California Subclass, incorporates the above allegations as if fully set forth herein.

154.    Section 1798.150(a)(1) of the CCPA provides:

[a]ny consumer whose nonencrypted or nonredacted personal information, as defined by [Civil Code section 1798.81.5(d)(1)(A)] . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for

statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

155.    Plaintiff is a consumer and California resident as defined by Civil Code section 1798.140(i).

156.    Defendant is a "business" as defined by Civil Code section 1798.140(d)(2) because it is "organized or operated for the profit or financial benefit of its shareholders or other owners," and

collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information, that does business in the state of California.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

33

157.    Plaintiff's and California Subclass Members' personal information, as defined by Civil Code section 1798.140(v)(1), was subject to unauthorized access and exfiltration, theft, or disclosure. The Data Breach described herein exposed, without limitation, names, addresses, state identification numbers, passport numbers, accommodation requests which may include characteristics of protected classifications under California or federal law as per 1798.140(v)(1)(C), and commercial information under 1798.140(v)(1)(D) such as Rewards points balance, and Rewards credit card type.

158.    Defendant maintained Plaintiff's and California Subclass Members' PII in a form that allowed criminals to access it.

159.    The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices for protecting the exposed information given its nature. Defendant failed to monitor its systems to identify suspicious activity and allowed unauthorized access to Plaintiff's and California Subclass Members' PII.

160.    Consistent with Civil Code Section 1798.150(b), Plaintiff will provide written notice to Defendant identifying the CCPA provisions that Defendant violated.

161.    On behalf of California Subclass Members, Plaintiff presently seeks actual pecuniary damages and injunctive relief in the form of an order enjoining Defendant from continuing to violate the CCPA. Unless and until Defendant is restrained by order of the Court, its wrongful conduct will continue to cause irreparable injury to Plaintiff and the California Subclass.

162.    If Defendant fails to timely rectify or otherwise cure the CCPA violations described herein, individually and on behalf of the California Subclass, Plaintiff reserves her right to amend this Class Action Complaint to seek statutory damages and any other relief the Court deems proper as a result of Defendant's CCPA violations pursuant to Cal. Civ. Code § 1798.150(a).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

## SEVENTH CAUSE OF ACTION
### Violation of the Unfair Competition Law
### Bus. & Prof. Code § 17200 et seq. ("UCL")
### *(On Behalf of Plaintiff and the California Subclass)*

163.    Plaintiff, individually and on behalf of the California Subclass, incorporates the above allegations as if fully set forth herein.

164.    Plaintiff pleads this claim for equitable relief, including restitution and injunctive relief, in the alternative to her claims for damages.

165.    The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

166.    Defendant's actions as alleged herein in this Class Action Complaint constitute an "unlawful" practice as encompassed by Cal. Bus. & Prof. Code §§ 17200 *et seq.* because Defendant's actions: (a) violated the California Consumer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*, (b) violated the CCPA, Cal. Civ. Code §§ 1798.100 *et seq.*, (c) constituted negligence; and (d) violated federal law and regulations, including the FTC Act.

167.    Defendant's actions as alleged in this Class Action Complaint also constitute an "unfair" practice as encompassed by Cal. Bus. & Prof. Code §§ 17200 *et seq.*, because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious. The harm caused by Defendant's wrongful conduct outweighs any utility of such conduct and has caused— and will continue to cause—substantial injury to the California Subclass, including Plaintiff. There were ample reasonably available alternatives that would have furthered Defendant's legitimate business practices, including using industry-standard technologies to protect data (e.g., two-factor authorization, effective encryption and anonymization, compartmentalization of sensitive data, software patches, limiting how much data any user may access, and the purging of data no longer necessary for Defendant's services). Defendant also unreasonably delayed in notifying Plaintiff and

the California Subclass Members regarding the unauthorized release and disclosure of their PII. Additionally, Defendant's conduct was "unfair" because it violated the legislatively declared policies reflected by California's strong data-breach and online-privacy laws, including the California Consumer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, the CCPA, Cal. Civ. Code §§ 1798.100, *et seq.*, and the California constitutional right to privacy, Cal. Const. Art. 1, § 1.

168.    Defendant's conduct also is deceptive in violation of the UCL. Defendant's fraudulent business acts and practices include:

a.  Failing to adequately secure the personal information of Plaintiff and California Subclass Members from disclosure to unauthorized third parties or for improper purposes;

b.  Enabling the disclosure of personal and sensitive facts about Plaintiff and California Subclass Members in a manner highly offensive to a reasonable person;

c.  Enabling the disclosure of personal and sensitive facts about Plaintiff and California Subclass Members without their informed, voluntary, affirmative, and clear consent;

d.  Omitting, suppressing, and concealing the material fact that Defendant did not reasonably or adequately secure Plaintiff's and California Subclass Members' personal information.

169.    Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of Plaintiff's and California Subclass Members' personal information.

170.    The harm from Defendant's conduct was not reasonably avoidable by consumers. Plaintiff and California Subclass Members were required to provide their PII to receive Defendant's travel services. Plaintiff and California Subclass Members did not know of, and had no reasonable means of discovering, that their information would be exposed to hackers through inadequate data security measures.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

171.    There were reasonably available alternatives that would have furthered Defendant's business interests of electronically transferring its customers' information while protecting PII.

172.    A reasonable person would regard Defendant's derelict data security and the Data Breach as important, material facts that could and should have been disclosed.

173.    As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct, Plaintiff lost money or property because her sensitive personal information experienced a diminution of value and because she devoted additional time to monitoring her financial accounts for fraudulent activity. Plaintiff faces ongoing and impending damages related to theft of her PII and PHI.

174.    Defendant's wrongful practices constitute a continuing course of unfair competition because, on information and belief, Defendant has failed to remedy its lax security practices. Plaintiff and the California Subclass seek equitable relief pursuant to Cal. Bus. & Prof. Code § 17203 to end Defendant's wrongful practices and require Defendant to maintain adequate and reasonable security measures to protect the PII of Plaintiff and the California Subclass.

175.    Plaintiff and California Subclass Members lack an adequate remedy at law because the injuries here include an imminent risk of identity theft and fraud that can never be fully remedied through damages, ongoing identity theft and fraud, as well as long term incalculable risk associated with medical fraud.

176.    Further, if an injunction is not issued, Plaintiff and California Subclass Members will suffer irreparable injury. The risk of another such breach is real, immediate, and substantial. Defendant has still not provided adequate information on the cause and scope of the Data Breach. Plaintiff and California Subclass Members lack an adequate remedy at law that will reasonably protect against the risk of a further breach.

177.    Plaintiff and the California Subclass also seek an order requiring Defendant to make full restitution of all monies it received through its wrongful

conduct, along with all other relief permitted under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class set forth herein, respectfully requests the following relief:

A.  Certifying this action as a class action under Fed. R. Civ. P. 23 and appointing Plaintiff and her counsel to represent the Class;

B.  Entering judgment for Plaintiff and the Class;

C.  Granting permanent and appropriate injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein and directing Defendant to adequately safeguard the PII of Plaintiff and the Class by implementing improved security controls;

D.  Awarding compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

E.  Awarding Plaintiff and Class Members statutory or punitive damages as allowed by law in an amount to be determined at trial;

F.  Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of Defendant's unlawful acts, omissions, and practices;

G.  Awarding to Plaintiff and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

H.  Awarding pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

I.  Granting such further and other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1  Dated: October 18, 2025

**SCHUBERT JONCKHEER & KOLBE LLP**

*/s/ Amber L. Schubert*
Amber L. Schubert

Robert C. Schubert (S.B.N. 62684)
Amber L. Schubert (S.B.N. 278696)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220
Facsimile:  (415) 788-0161
E-mail:     rschubert@sjk.law
            aschubert@sjk.law

*Counsel for Plaintiff Gabriele Willis and the Putative Class*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220