Amber L. Schubert (S.B.N. 278696)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union. St., Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220
aschubert@sjk.law

*Interim Class Counsel*

*[additional counsel listed on signature page]*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WESTJET AIRLINES DATA BREACH LITIGATION<br><br>---------------------------------------------<br><br>This Document Relates to: All Actions | Case No. 3:25-cv-02785-LL-MSB<br><br>**PLAINTIFFS' OPPOSITION TO WESTJET'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>Judge:  Hon. Linda Lopez<br>Ctrm:   14B |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

## **TABLE OF CONTENTS**

INTRODUCTION................................................................................................ 1

BACKGROUND.................................................................................................. 2

    I.   WestJet's Privacy Policies and Representations............................................ 2

    II.  The Data Breach................................................................................... 3

LEGAL STANDARD......................................................................................... 5

ARGUMENT...................................................................................................... 5

    I.   The ADA does not preempt claims based on WestJet's failure to safeguard customer data....................................................................... 5

         A.   Plaintiffs' claims are not "related to" WestJet's rates, routes, or services because they arise from independent data security obligations.............................. 6

         B.   The ADA's statutory structure confirms that Plaintiffs' claims are not preempted................................................... 10

         C.   The ADA's statutory purpose confirms that Plaintiffs' claims are not preempted................................................... 11

         D.   At minimum, preemption cannot be resolved on a motion to dismiss........................................................... 12

    II.  Plaintiffs' implied contract claim survives irrespective of whether the ADA applies to Plaintiffs' tort claims..................................... 12

         A.   The ADA permits judicial enforcement of an airline's self-imposed contractual obligations............................... 13

         B.   Plaintiffs seek to enforce WestJet's own privacy commitments, not impose external obligations.......................... 13

         C.   Plaintiffs request leave to amend................................................. 15

CONCLUSION.................................................................................................. 16

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

i

# TABLE OF AUTHORTIES

**Cases**

*Air Transp. Ass'n of Am. v. City & Cty. of S.F.*,
266 F.3d 1064 (9th Cir. 2001) ................................................................................... 8

*Al-Watan v. Am. Airlines, Inc.*,
570 F. Supp. 2d 925 (E.D. Mich. 2008) ..................................................................... 13

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995) ................................................................................................. 13

*AMTRAK v. Su*,
41 F.4th 1147 (9th Cir. 2022) .................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 5

*Boquist v. Courtney*,
32 F.4th 764 (9th Cir. 2022) ...................................................................................... 5

*Charas v. Trans World Airlines, Inc.*,
160 F.3d 1259 (9th Cir. 1998) .......................................................................... 8, 9, 10

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) ................................................................................................... 6

*DiFiore v. American Airlines, Inc.*,
483 F. Supp. 2d 121 (D. Mass. 2007) ......................................................................... 7

*Dilts v. Penske Logistics, LLC*,
769 F.3d 637 (9th Cir. 2014) ..................................................................... 6, 7, 11, 12

*Duncan v. Northwest Airlines, Inc.*,
208 F.3d 1112 (9th Cir. 2000) ............................................................................. 7, 10

*Fudge v. Delta Air Lines, Inc.*,
753 F. Supp. 3d 987 (C.D. Cal. 2025) ........................................................................ 15

*Hickcox-Huffman v. U.S. Airways, Inc.*,
855 F.3d 1057 (9th Cir. 2017) ........................................................................... 13, 15

*Hodges v. Delta Airlines*,
44 F.3d 334 (5th Cir. 1995) ...................................................................................... 12

*Jetblue Airways Corp.*,
385 F. Supp. 3d 1338 (S.D. Fla. 2019) ........................................................................ 9

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .................................................................................... 2

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

ii

*Lewis v. Cont'l Airlines, Inc.*,
 40 F. Supp. 2d 406 (S.D. Tex. 1999) ................................................................................... 9

*Manjunath Jagannatharao v. Etihad Airways*,
 No. 16-cv-00510-KAW, 2016 U.S. Dist. LEXIS 188767 (N.D. Cal. Dec. 13, 2016) ................. 8

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
 519 F.3d 1025 (9th Cir. 2008) ............................................................................................ 5

*McGarry v. Delta Air Lines, Inc.*,
 No. CV 18-9827, 2019 U.S. Dist. LEXIS 74033 (C.D. Cal. Apr. 16, 2019) ............................. 9

*McGarry v. Delta Air Lines, Inc.*,
 No. CV 18-9827-MWF (Ex), 2019 U.S. Dist. LEXIS 106236 (C.D. Cal. June 18, 2019) ......... 15

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
 521 F.3d 1097 (9th Cir. 2008) ............................................................................................ 5

*Montalvo v. Spirit Airlines*,
 508 F.3d 464 (9th Cir. 2007) ....................................................................................... 11, 12

*Morales v. Trans World Airlines, Inc.*,
 504 U.S. 374 (1992) ........................................................................................................... 6

*Morongo Band of Mission Indians v. Rose*,
 893 F.2d 1074 (9th Cir. 1990) .......................................................................................... 16

*Nat'l Fed'n of the Blind v. United Airlines, Inc.*,
 813 F.3d 718 (9th Cir. 2016) ........................................................................... 8, 9, 10, 11

*Northwest, Inc. v. Ginsberg*,
 572 U.S. 273 (2014) ................................................................................................... 13, 15

*Pardini v. Unilever United States, Inc.*,
 65 F.4th 1081 (9th Cir. 2023) ............................................................................................ 5

*Pica v. Delta Air Lines, Inc.*,
 No. CV 18-2876, 2018 LEXIS 220836 (C.D. Cal. Sept. 18, 2018) .................................. 10, 15

*Romano v. Am. Trans Air*,
 48 Cal. App. 4th 1637 (1996) ....................................................................................... 9, 12

*Rowe v. N.H. Motor Transp. Ass'n*,
 552 U.S. 364 (2008) ........................................................................................................... 9

*Schoene v. Spirit Airlines, Inc.*,
 726 F. Supp. 3d 1248 (D. Or. 2024) .................................................................................... 8

*Smith v. Am. West Airlines, Inc.*,
 44 F.3d 344 (5th Cir. 1995) ............................................................................................... 7

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

iii

*United States v. City of San Diego*,
   No. 23cv0541-LL-BJC, 2024 U.S. Dist. LEXIS 167688 (S.D. Cal. Sep. 17, 2024 .................... 16

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ............................................................................................ 5

*Vallarta v. United Airlines, Inc.*,
   497 F. Supp. 3d 790 (N.D. Cal. 2020) ........................................................................... 7

**Statutes**

49 U.S.C. § 41713(b)(1) ...................................................................................................... 6, 13

Airline Deregulation Act of 1978,
   Pub. L. No. 95-504, § 3(a), 92 Stat. 1705 ..................................................................... 11

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

iv

**<u>INTRODUCTION</u>**

This case is about a data breach—not the business of air travel. Plaintiffs do not challenge how WestJet prices its tickets, selects its routes, or provides airline services. They challenge something entirely different: WestJet's failure to safeguard highly sensitive personal information after it was collected from its customers. That conduct—how a company stores, manages, and protects customer data on its internal systems—is not part of the provision of air transportation. It is governed by generally applicable duties that apply to any business that collects personal information.

WestJet asks this Court to stretch the Airline Deregulation Act (ADA) far beyond its purpose to shield that conduct from liability. But the ADA does not preempt claims merely because an airline is involved. It preempts only state laws "related to rates, routes, or services." 49 U.S.C. § 41713(b)(1). Plaintiffs' claims do not plausibly relate to any of those things. They arise from WestJet's post-collection handling of customer data—conduct that is far removed from passenger travel and that exists independent of the airline industry.

Accepting WestJet's position would transform a statute designed to promote competition in air transportation into a broad immunity for routine corporate misconduct. Under WestJet's theory, any claim that imposes operational costs—even those based on generally applicable duties—would be preempted so long as the defendant happens to be an airline. That is not the law. Courts have repeatedly rejected such expansive interpretations, recognizing that the ADA does not displace traditional state-law remedies that only peripherally affect airline operations.

At a minimum, whether WestJet's post-collection data practices bear a sufficient connection to airline "services" is a fact-dependent inquiry that cannot be resolved on the pleadings. And even if Plaintiffs' tort claims were somehow deemed to fall within the ADA's scope, their implied contract claim would still survive because it seeks to enforce obligations WestJet voluntarily undertook with respect to Plaintiffs' personal information. This Court should deny WestJet's motion.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

1

## BACKGROUND

### I.    WestJet's Privacy Policies and Representations

WestJet operates year-round and seasonal flights between major Canadian cities and numerous destinations in the United States. ¶¶ 2–4, 30–31.[1] In the course of those operations, WestJet collects, stores, and processes the personally identifiable information (PII) of its customers—including Plaintiffs and Class Members—who are required to provide that information to book flights, maintain loyalty accounts, and use WestJet-affiliated credit cards. ¶ 27.

WestJet has long recognized the sensitive nature of this information and the importance of protecting it. ¶ 34. In exchange for obtaining and using customers' PII, WestJet represents that it will safeguard that information in accordance with its own policies, industry standards, and applicable law. ¶ 7. Its Privacy Statement expressly affirms that WestJet is "committed to respecting and safeguarding your privacy," and conditions the use of its services on customers' acceptance of its data practices. ¶ 32 & n.12; Schubert Decl., Ex. A ("By providing us with your personal information and using any of the products or services provided by us that link to this Privacy Statement, you indicate your acceptance of this Privacy Statement . . . .").[2] WestJet further represents that it has "implemented a comprehensive set of policies and practices" to protect PII and that such information will be retained only as long as reasonably necessary, after which it will be securely destroyed or anonymized. *Id.*

WestJet makes similar—and equally emphatic—representations in its Loyalty Program Privacy Statement, asserting that it maintains "sophisticated security

---

[1] All ¶ citations refer to Plaintiffs' Consolidated Class Action Complaint. Dkt. No. 10.

[2] True and correct copies of WestJet's Privacy Statement and Loyalty Program Privacy Statement, which Plaintiffs incorporate by reference in their Complaint are attached to the Declaration of Amber L. Schubert in Support of Plaintiffs' Opposition to WestJet's Motion to Dismiss. The Court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to [plaintiffs'] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

2

measures and procedures" to protect customer information from unauthorized access, use, or disclosure. ¶ 33 & n.13; Schubert Decl., Ex. B. Participation in the loyalty program is likewise conditioned on customers providing their PII and accepting these terms. *Id.* ("By providing us with your personal information and using any of the products or services provided by us that link to this Privacy Statement, you indicate your acceptance of this Privacy Statement . . . .").

These representations were not incidental. WestJet required customers to provide sensitive PII as a condition of accessing its services and affirmatively assured them that such information would be handled securely and responsibly.

Plaintiffs and Class Members provided their PII with the reasonable expectation—and mutual understanding—that WestJet would honor those commitments and safeguard their information from unauthorized access. ¶¶ 70, 83, 101, 116. It did not. Despite its repeated assurances, WestJet failed to implement adequate safeguards to protect the PII entrusted to it and retained sensitive information far longer than reasonably necessary for legitimate business purposes. ¶¶ 36–37. These failures materially increased both the risk and the scope of the Data Breach.

As a result, WestJet breached the obligations it undertook to protect Plaintiffs' and Class Members' PII, directly leading to the Data Breach and the harms alleged in the Complaint. ¶¶ 55–65.

## II.    The Data Breach

On June 13, 2025, WestJet "identified suspicious activity on [its] systems" and determined that "a sophisticated criminal third party" had gained unauthorized access. ¶¶ 8, 38. The attackers exfiltrated highly sensitive customer information, including names, dates of birth, mailing addresses, and passport or other government identification numbers. ¶¶ 39–40. They also accessed WestJet Rewards account information—such as rewards identification numbers, point balances, and related account data—as well as information tied to WestJet-branded credit cards, including card identifiers and changes to rewards balances. ¶ 41 .

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

3

Despite discovering the Breach in June, WestJet did not begin notifying affected individuals until on or around September 29, 2025—more than three months later. ¶ 10. Even then, its notice omitted critical information necessary for victims to protect themselves, including the timing and duration of the intrusion, the vulnerabilities exploited, the identity of the attackers, and the measures taken to prevent further compromise. ¶ 44. WestJet also failed to provide meaningful assistance to affected individuals. ¶ 45. Without this information, Plaintiffs and Class Members were left unable to assess their exposure or take timely steps to mitigate harm. ¶ 46.

The risks of such a breach were neither theoretical nor unforeseeable. WestJet knew—or should have known—that the volume and sensitivity of the PII it collected made it a prime target for cybercriminals. ¶ 47. Nevertheless, it failed to implement adequate safeguards to prevent unauthorized access to its systems.

Those failures had real and immediate consequences. Cybercriminals accessed Plaintiffs' PII, and misuse followed. Plaintiff Meredith incurred a fraudulent charge of approximately $100. ¶ 88. Plaintiff Vitske experienced fraudulent charges on his DoorDash and UberEats accounts in the months following the breach. ¶ 105. Plaintiffs also incurred out-of-pocket costs to protect themselves: Meredith now pays $24.99 per month for credit monitoring services, and Vitske has paid $75 per month for a Canadian phone plan in order to receive account updates from WestJet. ¶¶ 89, 107.

Beyond these pocketbook injuries, Plaintiffs have experienced and continue to experience a range of injuries stemming from the Data Breach, including increased spam communications, dark web alerts, invasion of privacy, diminished value of their PII, emotional distress, and loss of time spent monitoring and protecting their information. ¶¶ 73–74, 76, 79, 86–87, 91, 94, 105–06, 109, 112, 119–20, 122, 125. And because the exposed data includes highly sensitive identifiers such as passport information, Plaintiffs and Class Members face an ongoing and substantial risk of future fraud, identity theft, and targeted attacks. ¶¶ 14, 79, 94, 112, 125, 127.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

4

Plaintiffs bring this action to hold WestJet accountable for the harms caused by its deficient data security practices and delayed breach response—failures that exposed more than one million individuals to precisely the risks WestJet promised to prevent.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept the complaint's factual allegations as true and construe them in the light most favorable to plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

In evaluating a Rule 12(b)(6) motion, the Court may consider the complaint, materials incorporated by reference, and matters subject to judicial notice without converting the motion into one for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Preemption is an affirmative defense on which WestJet bears the burden. *Pardini v. Unilever United States, Inc.*, 65 F.4th 1081, 1084 (9th Cir. 2023). It may be resolved at the pleading stage only if it is apparent on the face of the complaint. *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022).

## ARGUMENT

**I.     The ADA does not preempt claims based on WestJet's failure to safeguard customer data.**

Plaintiffs' claims arise from WestJet's failure to safeguard highly sensitive personal information after it was collected from its customers. They do not challenge any aspect of air transportation—such as pricing, routes, scheduling, or in-flight services. Nor do they seek to regulate how WestJet provides those services. Instead, Plaintiffs seek to hold WestJet accountable for its independent obligation to protect

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

customer data—an obligation that exists regardless of whether WestJet is an airline, a hotel, or any other business that collects personal information.

### A. Plaintiffs' claims are not "related to" WestJet's rates, routes, or services because they arise from independent data security obligations.

When a statute contains an express preemption clause, the analysis begins with its text. *AMTRAK v. Su*, 41 F.4th 1147, 1152 (9th Cir. 2022). The ADA preempts only state laws "related to rates, routes, or services of any air carrier." 49 U.S.C. § 41713(b)(1). Plaintiffs' claims fall outside that scope because they arise from WestJet's failure to safeguard customer data after collection—not from any aspect of its rates, routes, or services.

### 1. Plaintiffs' claims arise from post-collection data handling governed by generally applicable duties.

The ADA does not preempt state laws that have only a "tenuous, remote, or peripheral" connection to an airline's rates, routes, or services. *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 643 (9th Cir. 2014). Although the Supreme Court has interpreted "related to" broadly to include laws having a connection with airline rates, routes, or services, that breadth is not unlimited. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992). Courts must draw a line between laws that meaningfully regulate airline operations and those whose connection is too attenuated to warrant preemption. *Dilts*, 769 F.3d at 643. The Supreme Court has cautioned that the breadth of the phrase "related to" does not mean "the sky is the limit," and that preemption provisions should not be read with "uncritical literalism," lest "for all practical purposes preemption would never run its course." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013).

Plaintiffs' claims fall on the non-preempted side of that line. They arise from WestJet's failure to safeguard customer data after it was collected—conduct that is far removed from the provision of air transportation itself. The duties at issue are not airline-specific; they are generally applicable obligations requiring companies that

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

6

collect sensitive personal information to implement reasonable data security measures. ¶¶ 7, 55–65. Holding WestJet to those obligations does not regulate how it prices tickets, selects routes, or provides air travel services. At most, the connection is indirect and attenuated, which is insufficient to trigger ADA preemption. *Dilts*, 769 F.3d at 643.

That conclusion is consistent with courts' repeated recognition that state laws are not preempted merely because they impose some downstream cost or operational consequence on an airline. As the Ninth Circuit has explained, if that were enough, "almost all personal injury claims would be preempted," because any successful suit could affect an airline's costs or operations. *Duncan v. Northwest Airlines, Inc.*, 208 F.3d 1112, 1115 (9th Cir. 2000). Courts have accordingly found numerous activities to be too attenuated to have a connection to an airline's rates, routes, or services. *See, e.g., id.* (rejecting preemption of in-flight smoking regulations); *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 803 (N.D. Cal. 2020) (rejecting preemption of travel insurance); *DiFiore v. American Airlines, Inc.*, 483 F. Supp. 2d 121, 126 (D. Mass. 2007) (rejecting preemption of voluntary tip regulations); *Smith v. Am. West Airlines, Inc.*, 44 F.3d 344, 347 (5th Cir. 1995) (rejecting preemption of boarding visibly deranged passenger).

The same is true here. Requiring WestJet to implement reasonable data security measures may have operational implications, but it does not transform Plaintiffs' claims into regulation of airline services.

Nor do Plaintiffs' allegations concern conduct integral to the act of transporting passengers. They concern WestJet's management of customer data stored on its systems—such as its failure to implement basic safeguards like secure firewalls, network monitoring, access controls, and vulnerability management. ¶¶ 56, 58. Those backend data security practices are several steps removed from any interaction between WestJet and its passengers. They therefore bear, at most, a tenuous and peripheral relationship to WestJet's rates, routes, or services—and are not preempted.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

7

### 2. Plaintiffs' claims have no connection to WestJet's "rates" or "routes."

WestJet does not dispute that Plaintiffs' claims have no connection to its rates or routes. "Rates" refer to ticket prices, and "routes" refer to the "courses of travel" that airlines offer to passengers. *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th Cir. 1998); *see also Air Transp. Ass'n of Am. v. City & Cty. of S.F.*, 266 F.3d 1064, 1071–72 (9th Cir. 2001) (holding non-discrimination ordinance not preempted because it did not affect rates). Plaintiffs do not challenge WestJet's pricing, its selection of routes, or its ability to offer particular flights. Instead, their claims arise from WestJet's failure to safeguard customer data after it was collected. Because imposing liability for those failures would not require WestJet to alter its prices or routes, Plaintiffs' claims fall outside the ADA's preemptive scope.

### 3. Plaintiffs' claims do not regulate WestJet's "services" because they concern post-collection data handling, not the provision of air transportation.

WestJet's argument rests on an overbroad understanding of "services." In the Ninth Circuit, "services" are defined narrowly to encompass only those aspects of air transportation that directly concern the provision of the flight itself. *Nat'l Fed'n of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 727–28 (9th Cir. 2016); *Schoene v. Spirit Airlines, Inc.*, 726 F. Supp. 3d 1248, 1258 (D. Or. 2024) ("The Ninth Circuit defines 'service' for purposes of preemption more narrowly than other circuits.").[3] As the

---

[3] *See also Air Transp. Ass'n of Am.*, 266 F.3d at 1071 (finding service "refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided"); *Manjunath Jagannatharao v. Etihad Airways*, No. 16-cv-00510-KAW, 2016 U.S. Dist. LEXIS 188767, at *15 (N.D. Cal. Dec. 13, 2016) (defining services as "directly concern[ing] the ability to access a flight, directly affecting the point-to-point transportation of passengers or the provision of air transportation itself"); *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008) (defining service as "essential details of the carriage itself"); *Romano v. Am. Trans Air*, 48 Cal. App. 4th 1637, 1645 (1996) (finding services does not include safety or operations); *Lewis v. Cont'l Airlines, Inc.*, 40 F. Supp. 2d 406, 411 (S.D. Tex. 1999) (finding services "must necessarily pertain to services particular to the airline industry").

---

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

8

Ninth Circuit has cautioned, interpreting "services" more broadly would ignore the term's context and "result in the preemption of virtually everything an airline does." *Charas*, 160 F.3d at 1265–66.

Plaintiffs' claims do not concern any air transportation services. They do not challenge the prices WestJet charges, the routes it flies, or the manner in which it provides air transportation. Instead, Plaintiffs' claims arise from WestJet's failure to safeguard customer data after it was collected. That conduct—how a company stores, manages, and protects personal information on its internal systems—is not part of the provision of air transportation and is not unique to the airline industry. The same duties apply to any company that collects sensitive personal information. *See Dolan v. Jetblue Airways Corp.*, 385 F. Supp. 3d 1338, 1346 (S.D. Fla. 2019) (rejecting preemption of airfare trip insurance because it was not "unique or limited" to the airline industry). Because Plaintiffs' claims target that independent, post-collection conduct, they do not regulate "services" within the meaning of the ADA.

The Ninth Circuit's decision in *National Federation of the Blind* confirms this distinction. There, the court held that airport kiosks were not "services," even though they facilitated access to air travel. 813 F.3d at 726. If tools that directly interface with passengers at the airport are not "services," then backend data security practices— several steps removed from any passenger interaction—are even further outside the scope of the ADA.

WestJet's reliance on *McGarry I* and *Pica* is misplaced. *See McGarry v. Delta Air Lines, Inc.*, No. CV 18-9827, 2019 U.S. Dist. LEXIS 74033 (C.D. Cal. Apr. 16, 2019); *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876, 2018 LEXIS 220836 (C.D. Cal. Sept. 18, 2018). Both are unpublished district court decisions that do not apply the Ninth Circuit's controlling definition of "services" under *Charas* and *Duncan*. In *McGarry I*, the court did not analyze whether data security practices fall within that definition at all. And in *Pica*, the court adopted a broad "impact on services" rationale—reasoning that common law claims are preempted if they might affect an

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

9

airline's operations or costs. 2018 U.S. Dist. LEXIS 220836, at *24. That approach is inconsistent with Ninth Circuit precedent, which makes clear that indirect economic or operational effects are not enough to trigger preemption. *Duncan*, 208 F.3d at 1115.

In short, neither decision addresses—much less undermines—the controlling principle that "services" refers to the provision of air transportation itself. Because Plaintiffs' claims concern post-collection data security practices rather than the provision of air travel, they are not preempted by the ADA. *See, e.g.*, *Nat'l Fed'n of the Blind*, 813 F.3d at 726 (finding no ADA preemption where regulation of airline kiosks "regulate an amenity that United has chosen to provide, not 'the provision of air transportation.'") (quoting *Charas*, 160 F.3d at 1266).

### B. The ADA's statutory structure confirms that Plaintiffs' claims are not preempted.

The ADA's statutory structure confirms that Plaintiffs' claims fall outside its preemptive scope. In interpreting the ADA, courts must read the preemption provision in context and in harmony with the statute as a whole. *Charas*, 160 F.3d at 1264.

In *Charas*, the Ninth Circuit emphasized that the ADA's structure reflects a balance: while Congress sought to prevent states from regulating airline prices, routes, and services, it did not eliminate traditional state-law remedies. *Id.* at 1265. For example, the statute requires airlines to maintain liability insurance—an obligation that would make little sense if all state-law claims were preempted. *Id.* It also includes a savings clause preserving "remedies now existing at common law," confirming that Congress did not intend to displace ordinary tort claims. *Id.*

Reading the ADA to preempt Plaintiffs' claims would upset that balance. Plaintiffs seek to enforce generally applicable duties requiring companies to safeguard sensitive personal information—duties that exist independently of airline regulation and have long been enforced through state tort law. Treating such claims as preempted would effectively nullify the ADA's savings clause and expand preemption far beyond the statute's focus on airline deregulation.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

10

Properly understood, the ADA preempts state laws that regulate how airlines provide transportation—not laws that hold companies accountable for failing to protect consumer data after it has been collected. Plaintiffs' claims therefore remain within the category of traditional state-law remedies that Congress chose to preserve.

**C.      The ADA's statutory purpose confirms that Plaintiffs' claims are not preempted.**

Because "everything is related to everything else," courts must look to congressional purpose to avoid an overbroad application of preemption. *Dilts*, 769 F.3d at 643; *see also Nat'l Fed'n of the Blind*, 813 F.3d at 724 (explaining that Congress's purpose is "the ultimate touchstone" of the ADA's preemption analysis). That purpose confirms that Plaintiffs' claims fall well outside the ADA's scope.

Congress enacted the ADA to promote economic deregulation and ensure that competitive market forces determine the price, availability, and variety of air transportation. Airline Deregulation Act of 1978, Pub. L. No. 95-504, § 3(a), 92 Stat. 1705. The statute was aimed at preventing states from imposing their own economic regulations on airline pricing, routes, or the provision of transportation services—not to "obviate all tort claims under state law that might in some peripheral way impact the airlines." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 475 (9th Cir. 2007).

Plaintiffs' claims do not implicate those concerns. They do not seek to regulate how WestJet prices its tickets, selects its routes, or provides air travel. Instead, they arise from WestJet's alleged failure to properly store and protect customer information after it was collected—conduct that occurs outside the provision of air transportation and is governed by generally applicable duties that apply to any company handling sensitive personal data. ¶¶ 7, 55–65. Imposing liability for such conduct does not interfere with market competition or the economic features of air travel; it simply enforces baseline obligations that exist independent of the airline industry.

Courts have long recognized that the ADA does not preempt these kinds of traditional state-law claims. *See Romano*, 48 Cal. App. 4th at 1645–46 (state-law

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

11

negligence claims not preempted where they do not intrude on economic deregulation); *Hodges v. Delta Airlines*, 44 F.3d 334, 338 (5th Cir. 1995) (rejecting argument that the ADA provides airlines immunity from ordinary negligence). As the Ninth Circuit has emphasized, preemption does not extend to claims that only peripherally affect airline operations. *Montalvo*, 508 F.3d at 475.

Extending preemption to claims based on post-collection data handling would depart from that settled understanding. It would transform a statute designed to promote competition into a broad shield against liability for routine corporate conduct—an outcome Congress neither expressed nor intended. The ADA does not displace generally applicable obligations governing how companies store and protect personal information, and nothing in its purpose suggests otherwise. For that reason, Plaintiffs' claims do not relate to rates, routes, or services.

**D.     At minimum, preemption cannot be resolved on a motion to dismiss.**

Even if the Court were to conclude that Plaintiffs' claims are not categorically outside the ADA's scope, dismissal would still be premature. ADA preemption is a context-specific inquiry that turns on the nature of the challenged conduct and its connection—if any—to airline rates, routes, or services. *See Dilts*, 769 F.3d at 643. Whether WestJet's post-collection handling of customer data bears a sufficient connection to airline "services" is a fact-dependent inquiry that cannot be resolved on the pleadings. *See Montalvo*, 508 F.3d at 475 (reversing dismissal where the record did not establish whether the challenged conduct affected airline services); *Al-Watan v. Am. Airlines, Inc.*, 570 F. Supp. 2d 925, 940 (E.D. Mich. 2008) (reserving ADA preemption issue for summary judgment). At a minimum, that is sufficient to deny WestJet's motion at the pleading stage.

**II.     Plaintiffs' implied contract claim survives irrespective of whether the ADA applies to Plaintiffs' tort claims.**

Even if the Court were to conclude that Plaintiffs' tort claims relate to airline "services," the ADA does not preempt Plaintiffs' implied contract claim. That claim

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

12

seeks to enforce obligations WestJet voluntarily undertook with respect to Plaintiffs' personal information.

### A. The ADA permits judicial enforcement of an airline's self-imposed contractual obligations.

The ADA does not preempt claims that seek to enforce an airline's own contractual undertakings. *See* 49 U.S.C. § 41713(b)(1). As the Supreme Court explained, "terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law . . . within the meaning of [the ADA]." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995) (citation modified). "A remedy confined to a contract's terms simply holds parties to their agreements." *Id.*

Consistent with *Wolens*, courts recognize that the ADA permits claims that enforce "obligations the airlines voluntarily undertook themselves, even when the obligations directly relate to fares, routes, and services." *Hickcox-Huffman v. U.S. Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017).

The critical distinction is between claims that enforce the parties' own agreement and those that impose external standards. *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 283–87 (2014). The ADA preempts the latter, but not the former.

### B. Plaintiffs seek to enforce WestJet's own privacy commitments, not impose external obligations.

Plaintiffs do not seek to impose generalized data-security obligations untethered to WestJet's conduct. They seek to enforce obligations that WestJet itself undertook in exchange for customers' personal information.

WestJet required passengers to provide sensitive personal information as a condition of purchasing airfare, and separately represented how that information would be stored, retained, and protected after collection. ¶¶ 160, 163. Those representations formed the basis of an exchange: customers provided valuable personal information, and WestJet undertook obligations to handle that information in

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

13

accordance with its stated practices. ¶¶ 163–64. Plaintiffs' implied contract claim arises directly from that exchange. Those commitments govern how WestJet agreed to handle customer information after it was collected—the same post-collection conduct that falls outside the ADA's scope.

WestJet's own privacy statements confirm the contractual nature of these commitments. WestJet advised customers that "by providing us with your personal information and using any of the products or services provided by us that link to this Privacy Statement, you indicate your acceptance of this Privacy Statement, as well as any other terms that are described when your personal information is collected." ¶ 32 & n.12; Schubert Decl., Ex. A. It told customers that "if you do not agree with or are not comfortable with any aspect of this Privacy Statement, please do not use such products or services or otherwise provide your personal statement to us." *Id.*

WestJet further represented that it maintains "sophisticated security measures and procedures" to protect personal information and is "committed to respecting and safeguarding your privacy." ¶¶ 32–33 & n.13; Schubert Decl. Ex. B.  And it assured customers that their PII would be retained only as long as reasonably necessary and securely destroyed or made anonymous when no longer required. Schubert Decl. Ex. A. These are not abstract aspirations; they are terms of the parties' agreement governing how WestJet would handle customer information after it was collected.

The Ninth Circuit's decision in *Hickcox-Huffman* confirms that these types of representations give rise to enforceable contractual obligations. 855 F.3d at 1063–64. There, the airline's commitment to provide "on-time baggage delivery," combined with language deeming travel as acceptance of its terms, was sufficient to establish a binding agreement—not "merely aspirational." *Id.* The same is true here. WestJet conditioned customers' use of its services on acceptance of its Privacy Statement and affirmatively committed to safeguarding personal information using specified practices. ¶¶ 32–33; Schubert Decl. Exs. A-B. As in *Hickcox-Huffman*, those representations are properly understood as contractual terms accepted through

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS CASE NO. 3:25-cv-02785-LL-MSB

14

customer conduct, and Plaintiffs' contract claim simply seeks to enforce those self-imposed obligations.

Enforcing those commitments does not impose external standards or enlarge WestJet's obligations. It holds WestJet to the promises it chose to make. That is precisely the type of claim *Wolens* permits and *Ginsberg* preserves: one grounded in the parties' own agreement, not in state-imposed policy. *Ginsberg*, 572 U.S. at 285.

WestJet's reliance on *Pica* and *McGarry II* is misplaced. In those cases, the alleged policies lacked sufficiently definite commitments and included disclaimer language undermining contractual intent. *See Pica*, 2018 U.S. Dist. LEXIS 220836, at *15-16; *McGarry v. Delta Air Lines, Inc.*, No. CV 18-9827-MWF (Ex), 2019 U.S. Dist. LEXIS 106236, at *12-13 (C.D. Cal. June 18, 2019). And unlike Delta's privacy policy in *Fudge*, which disclosed to customers that Facebook may track their flight booking information, WestJet's Privacy Policy did not disclose any practice that would expose the information it collected from its customers to unauthorized access or misuse. *See Fudge v. Delta Air Lines, Inc.*, 753 F. Supp. 3d 987, 996 (C.D. Cal. 2025).

Here, by contrast, WestJet expressly tied customers' provision of personal information and continued use of its services to its Privacy Statement. ¶¶ 32–33 & n.12–13; Schubert Decl., Exs. A–B. That statement, in turn, promises that WestJet will retain customers' data only as long as necessary and will use sophisticated security measures to protect it. *Id.* That distinction is dispositive. Accordingly, Plaintiffs' implied contract claim falls outside the ADA's preemptive scope.

### C.    Plaintiffs request leave to amend.

If the Court grants any portion of WestJet's motion, Plaintiffs respectfully request leave to amend. Leave should be freely granted, particularly at the pleading stage where the case remains in its infancy and no scheduling order has issued. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Courts routinely grant leave to amend even where the issue involves legal or jurisdictional defects that "may not be impossible" to cure. *United States v. City of San*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

15

*Diego*, No. 23cv0541-LL-BJC, 2024 U.S. Dist. LEXIS 167688, at \*25 (S.D. Cal. Sep. 17, 2024). That is the case here.

### CONCLUSION

For these reasons, the Court should deny WestJet's motion to dismiss. If the Court grants any portion of the motion, the Court should grant leave to amend.

Dated: March 20, 2026        */s/ Amber L. Schubert*

Amber L. Schubert (S.B.N. 278696)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Tel: (415) 788-4220
aschubert@sjk.law

*Interim Class Counsel*

Jennifer M. French (S.B.N. 265422)
**JENNIFER M. FRENCH, APC**
1050 University Ave E107-80
San Diego, CA 92103
Tel: (858) 205-4119
jenn@frenchlawapc.com

*Interim Liaison Counsel and Executive Committee Member*

Mark Reich (N.Y. S.B.N. 3907953)\*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Facsimile: (212) 363-7171
mreich@zlk.com

*Executive Committee Member*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

16

Scott Edelsberg (S.B.N. 330990)
**EDELSBERG LAW**
1925 Century Park E, Ste 1700
Los Angeles, CA 90067-27400
Tel: (310) 438-5355
scott@edelsberglaw.com

*Executive Committee Member*

Scott Falgoust (La. S.B.N. 33545)*
**BRYSON HARRIS SUCIU**
**& DeMAY PLLC**
5301 Canal Boulevard
New Orleans, LA 70124
Tel: (919) 585-4634
sfalgoust@brysonpllc.com

*Executive Committee Member*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT WESTJET'S MOTION TO DISMISS
CASE NO. 3:25-cv-02785-LL-MSB

17